Marquise de la Villa Palma v. Abat & Generes, et al.

No. 1446.—MARQUISE DE LA VILLA PALMA *v.* ABAT & GENERES, et al.

The insertion in the Act of Mortgage of the pact *de non alienando* does not invest the mortgage creditor with the right to disregard the forms of law in making a forced alienation of the mortgage debtor's property. The non-alienation clause springs from the agreement of the parties and dispenses the mortgage creditor from the necessity of resorting to the hypothecary action.

The transferee of mortgaged property with the pact *de non alienando* contained therein, may sue to annul a forced sale of the property by the mortgaged creditor on the ground that the formalities of law have not been observed in making the sale.

The objection that the mortgagee or his transferee has the right to require that the property mortgaged shall be sold in separate parcels, comes too late if not made before the sale. This ract in itself furnishes no ground to annul the sale.

APPEAL from Third District Court of New Orleans, *Fellowes*, J. *A. & M. Voorhies*, for appellant, *C. Dufour*, for Abat & Generes, appellees.

WYLY, J. Plaintiff, the purchaser of three lots subject to a special mortgage with pact *de non alienando*, sues to annul a subsequent sale under the foreclosure of said mortgage. The sale was made under executory process, and the three lots and improvements were sold in block, although appraised separately, and although described in the act of mortgage as separate lots.

Plaintiff's vendor, A. Costa, had mortgaged these lots prior to selling them to her, and defendants had been the owners and holders of the mortgage note under which the sale was made contradictorily with a curator *ad hoc*, representing the mortgage debtor, A. Costa, who was an absentee. The appraisers were duly appointed by this curator *ad hoc* and the mortgage creditors on the day of sale.

They appraised two of the lots together at $1800, and the third lot by itself at $1000, making total amount of appraisement $2800.

The curator *ad hoc* gave the sheriff no instructions whether to sell the property in block or separately; and the same was sold by the sheriff in block under instructions of the seizing creditor's counsel, for the price and sum of $3675 cash.

On the trial in the lower court there was judgment in favor of defendant, and against plaintiff. Plaintiff has appealed.

The various grounds of nullity set out in the petition, are all abandoned by plaintiff's counsel in the argument before this court, except the position that the sale is null because the lots were sold in block by the sheriff and not separately.

We concur with plaintiff that the insertion in the act of mortgage of the pact *de non alienando*, does not invest the mortgage creditor with the right to disregard the forms of law in making the forced alienation of his mortgage debtor's property.

We think the non-alienation clause springs from the agreement of the parties and not from a prohibitory law, based upon motives of public policy forbidding the transfer of property so mortgaged. The advantage of this clause is to save the mortgage creditor the necessity of resorting to the delays of the hypothecary action. He can proceed to

enforce his mortgage directly against his mortgage debtor without reference to the transferee of that debtor. But still the transferee is subrogated to his vendor's rights by virtue of the purchase, and has sufficient interest in the object of the contract of mortgage to sue to annul the sale if the forms of law have not been complied with by the mortgage creditor of his vendor in making the forced sale.

But from a careful examination of the law and the evidence in this case, we cannot concur with plaintiff that the sale is null because the lots and improvements were sold in block and not separately. The property sold in block for a much larger price than its appraisement, which was made separately. There is no evidence that the bystanders would have bid a greater price if the offering had been made separately.

But what right has this plaintiff to complain of the sale of property which she only held subject to the rights of her vendor's mortgage creditor? With the non-alienation clause she could not expect to be made a party to the sale. She occupied no better position than her vendor, and the sale was made contradictorily with him, through the curator *ad hoc* appointed by the court; and we regard the sale as valid. Even if the defendant in execution had the right to require the property to be sold separately, which we do not admit, still the objection now comes too late after the sale has been made contradictorily with the curator *ad hoc*. We cannot now permit that objection to be set up to the title acquired by the purchaser. (10 A. 725, 726).

The officer who made the sale in this case testifies that the curator was present and appointed an appraiser, but did not require him to sell the property separately; and this is corroborated by the evidence of the curator *ad hoc* himself.

The objection that the property was sold by the sheriff in block now comes too late. (See the case of Taylor *v.* Graham, 18 A. 656.)

For the reasons assigned we are of opinion that the plaintiff has failed to make out her case, and her action of nullity must be dismissed. It is therefore ordered that the judgment of the District Court be affirmed with costs.

---

APPLICATION FOR REHEARING, BY A. & M. VOORHIES.

The plaintiff respectfully prays for a rehearing, assigning as grounds:

I.—That *the fact* upon which this honorable court bases its opinion to *conclude and estop* plaintiff, so far from being borne out by the record, does not exist, AND IS NOT AVERRED BY THE DEFENDANTS THEMSELVES.

The court says that the curator *was present at the sale* and appointed an appraiser, but did not require the officer to make the sale separately; and that this is shown by the testimony of the officer and of the curator. If the curator had been present at the sale and had remained silent, then, clearly under the decision in 10 An. p. 725, the purchaser would be entitled to protection; for that would be a clear case of estoppel. The *presence* and *silence* of the party at the sale, protects third persons purchasing against all informalities and illegalities. But *the curator was not present at the sale;* and we say emphatically that he does not so

state in his testimony, nor does the officer make such a statement. The whole testimony of the curator is at page 56, Rec., and ALL he says is, "he gave no instructions at all to the sheriff in regard to the properties seized and sold in that case." Not a word more.!

Mr. de Armas, the officer, (Rec. pages 56-57) does not as much as *allude* to the curator *ad hoc*, nor, to his *presence at the sale*, nor even *to his appointing an appraiser!*

The only part of the record that mentions the appointment of an appraiser by the curator, is the. very report of the appraisers, marked X, Rec. p. 39. This appointment was made on the seventeenth March, 1866, *two days before the sale!* (Rec. pp. 39, 48).

II.—The case of Taylor *v.* Graham, 18 An. 656, does not present a case where the property was *appraised separately and sold in block, notwithstanding the fact that the party had appointed an appraiser who actually had appraised the properties separately.* Judge Ilsley says the objection simply was, "that the sheriff sold in block two distinct and separate pieces of property which should have been sold *separately*." This objection is disposed of at page 658, the court merely observing: "we cannot perceive any irregularity or illegality *in the appraisement* of the property sold; and this ground must be disregarded."

The court decided that there was no irregularity in the appraisement, but nothing more.

III.—The court says: " The property sold in block for a much larger price than its appraisement, which was made separately." *Ergo,* no injury was done:

The injury, on the contrary, is proven, not merely by the fact that bidders were deterred from buying; but, conclusively, by proof unmistakable *as to the value of the property.* The testimony of Bonnecaze, who was agent of plaintiff to rent said property, shows what the value was by the rent it yielded. (See Rec. p. 26.) If, even in war times, it rented for $408 a year, when, as is well known, rents here were merely nominal, your Honors must conclude that the property sold for one half its real value. If the sheriff obtained a higher bid than the appraisement, that only proves how loosely and defectively the appraisement was made, a circumstance not unusual in proceedings by *curator ad hoc.* But if the sale in block is irregular and informal, it is null without reference to the fact of injury; and the only object of proving injury in this case is to make it not only a *legal* but an *equitable* one.

IV.—The court is mistaken when it conceived that plaintiff was merely a purchaser of property, subject to a special mortgage with clause *de non alienando.* The plaintiff was *the owner previously,* but her title was not recorded when the mortgage was executed. The mortgagor, as her agent, made the purchase *in his own individual name.* (See title deeds, Rec. p. 34.) Her agent, subsequently. (in fraud of her rights) executed the mortgage in the furtherance of his own individual affairs. Of course the defendants, as third possessors, are protected by the nonregistry; but is it not carrying the doctrine too far to assimilate her strictly to the condition of a mere subsequent third possessor? If, in the meantime, instead of taking a deed of sale from her agent, she had sued in revendication and obtained judgment, the mortgage, unquestionably, would still. have remained. But, then, could she have been treated by the mortgagee as a mere third possessor?

Be that as it may, plaintiff stands at *least in the shoes of the mortgagor* and *if he could* argue the nullity of the sale, she certainly can also. That is all she attempts to do here. And the question is : can he defeat her rights by not joining her in the action of nullity? If this question is solved affirmatively, then she is at the mercy of her agent, who first violated his trust by taking title in his own name and then mortgaging the property for his own benefit.

Rehearing refused.